## Case No. 6,948.

### HUSSEY v. McCORMICK.

[1 Biss. 300; 1 Fish. Pat. Cas. 509.] [1]

Circuit Court, N. D. Illinois. Sept. 19, 1859.

PATENTS—RE-ISSUE—PRESUMPTION—"REAPING MACHINES."

1. The invention of Obed Hussey, under his patent of August 7, 1847, and reissued in 1857, consisting of a vibrating scalloped cutter, combined with slotted guard-fingers fastened in front and open in the rear, held valid.

---

[1] [Reported by Josiah H. Bissell, Esq., reprinted in 1 Fish. Pat. Cas. 509, and here republished by permission.]

2. It is immaterial whether such opening be placed below or above the cutter, as the patent makes no such distinction.

3. Nor is it material that the scallops upon the cutter should be of any particular depth, or that the angle they make should be greater or less. A right which may be lost by the variation of an angle can be of no value.

4. The legal presumption is, from the action of the patent office, that the reissued patent is for the same invention as the original patent.

[Cited in Crompton v. Belknap Mills, Case No. 3,406; Locomotive Engine Safety Truck Co. v. Pennsylvania R. Co., Id. 8,453.]

5. Differences in the claims are consistent with the identity of the thing designed to be patented in both patents, it being one object of the surrender to correct by changing the description, or claim, or both.

[Cited in Ex parte Ball, Case No. 810; Crompton v. Belknap Mills, Id. 3,406; Young v. Foerster, 37 Fed. 204.]

This was a bill in equity, filed to restrain the defendants from infringing letters patent [No. 5,227], granted to complainant, August 7, 1847, for "improvements in reaping machines," which letters patent were surrendered, and three several patents, numbered 449, 450, and 451, were re-issued April 14, 1857, for distinct and separate parts of the thing originally patented. The defendants were charged with infringement of reissue No. 449. The specification of the original patent was as follows: "Be it known, that I, Obed Hussey, of the city of Baltimore, and state of Maryland, have invented a new and useful improvement on the reaping machine invented by me, and patented in 1833, and I do hereby declare that the following is a full, clear, and exact description of the construction and operation of the same, reference being had to the annexed drawings, making a part of the specification in which Fig. 1 is a bird's eye view of the cutting apparatus, in which AAAAAA represent the vibrating cutting-blades; BBBBBB the permanent guard-irons; H represents a part of the wood-work. The guards are formed of a lower piece and an upper piece, admitting the blade to pass between in cutting, so that the straw, grass, hemp, corn, &c., which comes in between the guards to be cut, is firmly supported, both above and below the vibrating blades. In my original invention, the upper part of the guards were fastened to the lower part, both before and behind the blades, as represented at CCCC; the grass, straw, etc., which is not perfectly cut is forced in by the motion of the blades, and works back between the blades and the upper piece of the guards, materially obstructing the free movement of the blades; in wet weather frequently causing what the farmers call choking. The improvement for which a patent is now asked is represented at DDDD, where the upper piece of the guard is fastened to the lower piece only at the point, leaving the back end unconnected, consequently the space between the upper and lower pieces of the guard through which the blades vibrate is open be-

hind, so that the grass, etc., which is forced in by the action of the blades, now passes freely out through the opening; which opening, when used in combination with vibrating blades, constitutes a claim in this improvement, and is represented at DDDD, Fig. 1, and at A, Fig. 3. My improvement extends also to the prevention of the accumulation of grass, etc., under the blades, which I will describe as follows: In my original invention, the blades are ground with a bevel on both sides of the edge; the purpose of this is, that, by means of the shoulder of the bevel, the sharp edge is prevented from coming in immediate contact with the iron in passing the guard. This bevel is not so necessary near the fork of the blades as near the points, hence, in this improvement, about one inch of edge, at the fork, is flush on the upper side, leaving the bevel all on the upper side. The design of this is that the grass, etc., which is forced in between the blades and the lower part of the guard, shall be cut up and worked out by the flush edge acting close to the iron at the fork. This latter improvement is also claimed as new, in its application to the particular purpose for which it is designed. Fig. 2 is a sectional view of one of the guards in my original invention. A is a part of the wood-work as seen at H, Fig. 1. Fig. 3 represents one of the guards containing the improvement before described. A is the opening; B, part of the wood-work. Fig. 4 represents a view of one of the blades with the flush edge (EE) on each side of and at the fork of the blades, (A 1.) I accordingly claim the opening above the blades at A, Fig. 3, and at D, Fig. 1, in combination with vibrating blades. I also claim the particular application of the flush edge at the fork of the blades, for the purpose described. The end and design of the improvements above claimed, is to prevent the blades choking. Obed Hussey."

The description of the invention in reissue 449, was substantially the same as that contained in the original patent. The only material differences consisted in the addition of the following paragraphs, and in the claims: "Reaping machines have heretofore been constructed, some with straight blades with smooth edges and having a rotary motion, in which the cutters were arranged to work through slots between the upper and lower parts of guard-fingers, which parts were connected only at the front ends. In such machines the fingers acted: 1st, as guards or protectors to prevent the edge of the cutter from being injured by collision with stones or similar obstacles; and 2d, like the teeth of a comb, to divide the stalks of grain or grass while being cut, into narrow strips or parcels and hold them from leaning to the right or left, as the edges of such cutters were borne forward against the stalks, and drawn across to cut them. It is evident that in such a cutting apparatus, the blades, if smooth edged, cut like a knife, or, if sickled, like a saw, without the aid of another edge, between which and the edge of the blade, the stalks may be sheared or clipped. But in machines in which the cutter has a scalloped edge, the fingers serve three purposes: first, they act as protectors to the edge; secondly, they divide and hold up the stalks; and thirdly, they act as fixed shear blades, between which, and the edges of the scallops, the grain or grass is clipped. But the shearing or clipping action tends to force the stalks crosswise of the finger into the slots, so that in such machines the slots, between the upper and lower parts of the fingers, through which the scallops play, are liable to clog or choke, either impeding or wholly preventing the cutting action of the machine; by reason of this tendency of the scalloped sickle to force the stalks across, and thus entangle them upon the fingers, all the modes heretofore devised, of working this sickle were comparatively ineffective. But as the scalloped blade is, in my judgment, the best of all cutters, it is of great importance to overcome every impediment to its successful working, which I have done in the manner before described, viz., by combining with it a slotted finger, the upper and lower parts of which are connected with each other only at the points, and one part only being attached to the frame of the machine, leaving an opening at the rear of the slot, through which the clogging matter can work its way out. I claim as my invention the combination of a vibrating scalloped cutter, the indentations of whose edge act as a series of moving shear blades, with slotted guard fingers, the sides of which act as a corresponding series of fixed shear blades, the parts of such fingers forming the slot, being connected at the front ends only, leaving the rear of the slot open and free for the escape of material that would otherwise clog the cutter, substantially as described. In testimony whereof, I have hereunto subscribed my name. Obed Hussey."

The defendants denied that Hussey was the original inventor of the improvement claimed, and insisted that C. H. McCormick was the original and first inventor thereof. They also insisted that they did not infringe the reissued patent, because the slot in the finger, used by McCormick, was open below the cutter, whereas in the patent the opening was above; also, because the McCormick cutter was not so deeply scalloped as the Hussey cutter; and also because the reissued patent was not for the same invention as that for which the original patent was granted.

[A bill to protect the same patent was heard in Case No. 6,946, and the costs taxed in 6,946a.]

P. H. Watson and Geo. Harding, for complainant.

Goodwin & Larned and Chas. M. Keller, for defendants.

Before McLEAN, Circuit Justice, and DRUMMOND, District Judge.

McLEAN, Circuit Justice. The complainant states in his bill that prior to February 17th, 1847, he was the first and original inventor of certain new and useful improvements in reaping machines; and that letters patent were granted to him therefore, bearing date August 7th, 1847. That said letters patent were surrendered for insufficient specification, and three several patents dated April 14, 1857, were reissued for distinct and separate parts of the thing originally patented, pursuant to the act of congress of March 3d, 1837 [5 Stat. 191].

That the defendants have constructed machines since the date of the reissued patent, in violation of one of the reissued letters patent, numbered 449. Hussey says: "I claim as my invention the combination of a vibrating scalloped cutter, the indentations of whose edges act as a series of moving shear blades, with slotted guard-fingers, the sides of which act as a corresponding series of fixed shear blades; the parts of such fingers forming the slot being connected at the front ends only, leaving the rear of the slot open and free for the escape of material that would otherwise clog the cutter, substantially as described."

This combination is so succinctly and clearly expressed, that no one can mistake it. A vibrating scalloped cutter, combined with slotted guard-fingers, fastened in front and open in the rear, constitutes the invention. The cutter operates through the slots in the guard-fingers, and they, being fastened in front and open in the rear, permit the material which accumulates to escape.

And the defendants admit in their answer: "If the claim of the reissued patent, No. 449, should be so construed as to cover the employment of a vibrating scalloped-edge cutter, of any kind, in combination with slotted guard-fingers with the opening for the discharge of the material that would otherwise clog the cutter, whether such opening be placed above or below the cutter, then the defendants, further answering, admit that the defendant, Cyrus H. McCormick has long prior to and since the 14th of April, 1857, manufactured and sold large numbers of reaping machines involving the combination so claimed and construed; and that he has now on hand, completed and for sale, a small number of such reaping machines."

This admission is made on the hypothesis that the court shall construe the claim to be for a vibrating scalloped cutter of any kind, in combination with slotted guard-fingers, with the opening for the discharge of material that would otherwise clog the cutter, whether such opening be placed below or above the cutter.

As stated, the admission is made in the language of the patentee, with the exception of the words, "whether such openings be placed below or above the cutter;" but as these words were not used by the patentee, it is difficult to see how they can affect his rights. The call is for slotted fingers, the parts forming the slots being connected at the front ends only, leaving the rear of the slot open and free. If the slot be open and free in the rear, it would seem that there can be no obstruction to the cutter by the clogging matter. "Whether the opening be placed above or below the cutter," is not in the case. It is both below and above the cutter, and unless some new rule shall be found, which shall enable the defendant to modify the claim of the plaintiff, we suppose it must stand.

In their further answer the defendants allege that Hussey is not the original and first inventor of such improvement, but long prior to the invention by him, substantially the same construction and combination was invented and described in letters patent granted to Cyrus H. McCormick, which letters patent are dated June 21, 1834, and that the machines were in use long prior to the invention of the complainant.

In answer to this, it is only necessary to say, that an inspection of McCormick's patent of 1834 will show that it contains no such combination of a vibrating scalloped cutter with slotted guard-fingers fastened at the front only, leaving the rear open and free, as called for by the complainant in his reissued patent of 1857. The cutting apparatus described in McCormick's patent of 1834 was a "vibrating straight-edge sickled blade," stated to be, "a long cutter of steel grooved or notched on its lower edge like a reaping hook, with the grooves running in a line toward the right of the machine."

This cutter, in form and principle, was unlike the scalloped cutter of Hussey, to say nothing of the other parts of the machine, or of the combination claimed and so clearly described by him. The same remark will apply to the alleged improvement of McCormick, in 1840 or 1841. That consisted of "a vibrating cutter with a straight edge, and with the sickle teeth cut therein in sections, and inclined in opposite directions." Whether this improvement had been the subject of experiment, and machines with the improvement had been sold to various persons in 1840–42, can be a matter of no importance, as it was wholly different from the right of the plaintiff. These machines, with "wooden slotted fingers," as appears from the evidence, were abandoned by McCormick, and simple unslotted fingers were substituted in their place. But not one of his experiments, however numerous they may have been, seems to have reached the organization and effect of the plaintiff's machine, until, by his own admission, he adopted its principles.

If anything in addition to this testimony

be necessary, it is found in the testimony of Henry B. Renwick. He was a principal examiner in the patent office a number of years, and for the last four or five years United States inspector of steamers in the port of New York. He states that on examination of the defendant's machine, with the reissued patent No. 449, he finds it is a substantial representation of the invention set forth in the patent, and that the variations are formal and not substantial. Neither the science nor the practical knowledge of this witness is controverted. His statement stands uncontradicted.

It is objected that the scallops used by McCormick in his cutting apparatus have less depth than those used by Hussey. This is a formal and not a substantial objection. The scallops were not required to be of any particular depth, or that the angle they make should be greater or less. This was necessarily left to the knowledge and experience of the mechanic. Practical utility was the end to be attained in the use of the scalloped cutter. Some mechanics may prefer one angle, some another. A right which may be lost by the variation of an angle, can be of no value.

The cutting operation of Hussey is done by shears, which cut the substance presented at an angle, and which many prefer to the sickle-edge cutter. Whether the cutting is done by the one or the other instrument, it is rightly denominated the scalloped cutter.

The objection that the sole purpose of the surrender and reissue of the complainant's patent was to cover what Hussey had not invented and which he knew to have been previously invented and constructed by McCormick, does not seem to accord with the admission of the defendants, that if the claim should be sustained as made, they have manufactured and sold since April 14, 1857, a great number of reaping machines, involving the combination so claimed and constructed.

The legal presumption is, from the action of the patent office, that the reissued patent is for the same invention as the original patent (O'Reilly v. Morse, 15 How. [56 U. S.] 62); and in that case it was held that "differences in the claims are consistent with the identity of the thing designed to be patented in both patents, it being one object of surrender to correct by changing the description, or claim, or both. This is the well settled doctrine of the supreme court." Batlin v. Taggart, 17 How. [58 U. S.] 74.

In their answer the defendants admit "that the letters patent of August, 1847, were surrendered, and that thereupon three several patents were granted April 14, 1857, to Hussey, each for a separate part of the reaping machine described in the surrendered letters patent."

In the patent of 1847, a combination of the scalloped cutter with a slotted finger connected at the point and open at the rear,

was represented. The description in the reissued patent is more concisely and clearly expressed; but the identity of the invention plainly appears. The corrected phraseology is clearly within the provisions of the patent law.

A repetition of the elements of Hussey's invention and their combination could add no strength to what has been said in regard to his improvement. There is no ground on which to question his good faith in making a surrender of his patent, and procuring three several patents, each for a separate part of the reaping machine described in the surrendered letters patent.

Nor is there any evidence of a just pretention on the part of C. H. McCormick, that he was the original and first inventor of the improvement claimed by Hussey. In the absence of all evidence as to the want of novelty in this invention, we may well conclude that Hussey was the inventor, and that he is entitled to damages for a violation of his patent, and to an injunction.

As Cyrus H. McCormick, from the facts alleged and admitted in the answer, is the person responsible to the complainant, the other two defendants being his employes, the bill will be dismissed as to them, and the case will be referred to a master, who will take an account, etc., under the directions of the counsel of the complainant, subject to the objections which may be made by the defendant's counsel.

[For other cases involving this patent, see note to Hussey v. Whitely, Case No. 6,950.]